UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

PAUL M. NIGL ,

           Plaintiff,

v.                                           Case No. 05-C-223

PHILIP KINGSTON,

           Defendant.

**ORDER**

On February 25, 2005, Paul M. Nigl filed this petition pursuant to 28 U.S.C. § 2254, asserting that his state court conviction and sentence were imposed in violation of the Constitution. Petitioner was convicted in Winnebago County Circuit Court of two counts of homicide by intoxicated use of a motor vehicle and was sentenced to sixty years imprisonment. He is currently incarcerated at the Waupun Correctional Institution. His petition has been fully briefed and, for the reasons given herein, it will be denied.

**I. Background**

Nigl was convicted of two counts of homicide by intoxicated use of a motor vehicle. He argues now that his due process rights were violated because he was denied a motion for a continuance, he was denied effective assistance of counsel, and his blood draws were illegally obtained. Nigl appealed his claims to the Wisconsin Court of Appeals. He alleged that his blood draws should have been suppressed for a lack of probable cause and the officer's failure to comply with Wis. Stat. § 343.305(9)(a). Second, he alleged that his counsel was ineffective for not

requesting a lesser-included offense instruction. Lastly, he argued that the trial court erroneously exercised its discretion in failing to grant his motion for a continuance. The Wisconsin Court of Appeals denied all of Nigl's claims and affirmed the trial court's ruling. Nigl then brought this habeas corpus petition. Other relevant facts are set forth in the analysis below.

**II. Analysis**

**1.      Denial of Continuance Motion**

Nigl first argues that the Wisconsin Court of Appeals unreasonably applied federal law when it disallowed Nigl his ability to present his only defense. *See Chambers v. Mississippi,* 410 U.S. 284, 302 (1973). Nigl claims that because the trial court denied his motion for a continuance, he was unable to present an expert witness who could testify that Nigl was not intoxicated. He alleges that morphine and trauma increased his blood alcohol content to a level that exceeded the legal limit. However, because he was denied a continuance, he could not retain an expert to testify that the morphine and trauma in fact did increase his blood alcohol content. Therefore, Nigl claims he was deprived due process.

At trial, Nigl's attorney argued that a continuance was warranted for two reasons. First, Nigl's attorney stated that Nigl had notified his counsel of new information and that more time was needed to prepare a defense. Second, Nigl needed a continuance to retain an expert. The trial court denied Nigl's motion for a continuance, stating that because Nigl had the toxicology report for two months, he had sufficient time to prepare a defense and retain an expert. Furthermore, any further delay in the proceedings would result in hardship to the victim's families.

In Nigl's subsequent appeal, the Wisconsin Court of Appeals assessed whether the trial court had erroneously exercised its discretion in denying Nigl's motion for a continuance. *See State v.*

2

*Leighton,* 616 N.W.2d 126 (Wis. Ct. App. 2000). The Court of Appeals agreed with the trial court that Nigl obtained the toxicology report two months prior to his continuance motion, and that two months was sufficient time to obtain an expert and prepare a defense strategy. In addition, the prosecution had asked for a speedy trial and the trial court believed a continuance would be unfair for the victim's families. Lastly, the Court found that Nigl would not be unduly prejudiced if he were denied the motion.

Nigl now alleges that his due process rights were violated when he was denied a continuance. He specifically alleges that because the Court of Appeals' opinion does not mention the morphine in his system–information Nigl did not receive until *after* requesting the continuance– the Court erroneously concluded that Nigl had this information for the entire two months he possessed the toxicology report. He further alleges that had the Court of Appeals considered the morphine evidence, they would have found a due process violation.

I note at the outset that a trial court's denial of a continuance "is a matter of state evidentiary law that does not provide a basis for federal habeas relief." *Martin v. Evans,* 384 F.3d 848, 855 (7th Cir. 2004). Federal relief is only available when the denial is so burdensome to the defendant that it implicates his due process rights. Obviously, not every denial of a continuance motion will result in a due process violation. *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964). To determine whether a due process violation occurred, courts look to the circumstances and reasons presented to the trial judge at the time the request is denied. *Id.* Then, only when the judge abused that discretion will there also be a finding of a due process violation. *United States ex rel. Searcy v. Greer*, 768 F.2d 906, 913 (7th Cir. 1985).

3

Based on the circumstances and reasons presented to the trial judge at the time the request was denied, no abuse of discretion occurred at trial and Nigl's due process rights were not violated. Nigl's attorney based his motion for a continuance on the fact that they needed more time to retain an expert and that the defendant failed to provide his counsel with information relevant to a defense until the last minute. There was no mention as to why Nigl needed more time to retain an expert. Based upon these reasons, the judge acted with appropriate discretion in denying the motion. Nigl possessed the toxicology report for two months and had ample time to retain an expert and plan a defense. In addition, there is nothing to suggest that Nigl was denied the ability to appropriately communicate with counsel. Therefore, there is no reason why Nigl could not have communicated this relevant information earlier.

Nigl suggests that obtaining an expert was really his only way to present a defense and that the court's refusal to allow him to do so denied him due process. This claim seems based on the evidence he received that there was morphine in his system, a fact which he believes an expert could have used to present a defense. But as the state notes and Nigl concedes, Nigl did not receive the morphine evidence until *after* he moved for the continuance. Accordingly, that information was never placed before the trial judge, which means it is wholly irrelevant in determining whether the judge denied him due process.

Of even greater importance is the fact that, even now, Nigl fails to explain how he was prejudiced by the trial court's denial of his request for a continuance. He fails to explain what evidence he was unable to offer in his defense but that he would have introduced had the continuance been granted. To say that he wanted to retain an expert at this late date is not enough. What would the expert have said that would have made a difference? Nigl does not say. Absent

4

such evidence, it is impossible to say that Nigl suffered any prejudice as a result of the trial court's ruling. For all of the foregoing reasons, this claim presents no grounds for relief.

**2.     Ineffective Assistance of Counsel**

Nigl also argues that the Wisconsin Court of Appeals unreasonably applied federal law when it denied his ineffective assistance of counsel claim. Nigl specifically alleges that the Court of Appeals unreasonably applied the prejudicial prong of the *Strickland* analysis in finding that counsel's deficient performance did not cause him prejudice. The rule set forth in *Strickland v. Washington,* 466 U.S. 668, 687 (1984) is "clearly established federal law." See 28 U.S.C. § 2254(d)(1). The rule provides that a defendant is denied effective assistance of counsel if (1) counsel's performance did not meet an objective standard of reasonableness, and (2) counsel's deficient performance caused the defendant prejudice.

Nigl argues that because his counsel did not request the lesser-included offense instruction of homicide by negligent operation of a vehicle, he was denied effective assistance of counsel. Nigl alleges that the morphine administered him by doctors combined with the trauma he suffered affected his blood alcohol content, causing it to exceed the legal limit. As a result, but for the morphine and trauma, Nigl's blood alcohol content would have been below the legal limit. Thus, in his view there were reasonable grounds for an acquittal on the homicide by intoxicated use of a vehicle charge and a conviction of the lesser-included offense. Instead, the jury was only instructed on the homicide by intoxicated use of a vehicle charge and found Nigl guilty.

The court of appeals applied the correct state law, requiring the defendant to show both counsel deficiency and prejudice in order to prevail. *See State v. Thiel*, 665 N.W.2d 305 (Wis. 2003); *see also Strickland*, 466 U.S. at 687. The court held that Nigl would not have been granted

5

the lesser offense instruction, thus the failure to ask for the instruction did not prejudice Nigl. The court stated "[s]ubmission of a lesser included offense instruction is proper only when there are reasonable grounds in the evidence both for acquittal on the greater charge and conviction on the lesser offense." *State v. Fleming,* 510 N.W.2d 837, 842 (Wis. Ct. App. 1993). Because Nigl's blood alcohol content exceeded the legal limit, and because he admitted to using alcohol and drugs prior to the accident–cocaine and marijuana were found in his system–the court concluded that no reasonable jury could acquit Nigl on the greater offense but convict him on the lesser. Thus, the lesser offense instruction would not have been allowed and the failure to request such instruction did not prejudice Nigl.

Once again, Nigl presents no basis for habeas relief. The court of appeals applied the correct federal standard, as established in *Strickland,* and reasonably applied that standard to the facts of this case. It did not do so unreasonably. 28 U.S.C. § 2254(d)(1). Nigl's argument seems to be that because the court of appeals' opinion failed to address the morphine evidence and its potential support for a conviction on the lesser charge, it unreasonably applied federal law when it determined that counsel's failure to request the lesser-included offense instruction did not prejudice Nigl. That is not the case. As noted earlier, the morphine issue was not placed before either the trial court or the court of appeals, and it is therefore impossible to conclude that either court unreasonably applied the law when it adjudicated the issue.

As relevant to the instant claim for ineffective assistance, it is similarly impossible to conclude that trial counsel was ineffective for failing to pursue an avenue that was only presented to him at the last minute. Nigl suggests that counsel should have obtained experts to testify that the existence of morphine in one's system could lead to false BAC results, but counsel attempted to

6

gain a continuance and failed. It is thus unclear what other efforts counsel could reasonably have undertaken. In addition, as noted above, even now Nigl offers no evidence that morphine actually does have such an effect. His argument is therefore speculative at best. Because Nigl's claim that counsel should have moved for a lesser included offense is based solely on counsel's ability to effectively marshal the morphine evidence–efforts which were impossible under the circumstances and–because there is no showing that such evidence even exists, Nigl's claim for ineffective assistance fails.

**3. Unreasonable Search and Seizure**

Finally, Nigl argues that the blood draws administered to him at the hospital following the accident violated the Fourth Amendment right to be free from unreasonable searches and seizures. Hospital staff took the first blood draw for diagnostic purposes at 7:50 a.m.–soon after the accident–and then hospital staff took a second blood draw at 9:00 a.m., this time at the direction of a police officer.

Nigl objected to the admission of both blood draws at trial. Nigl objected to the second, or legal, blood draw on the grounds that it violated *State v. Thorstad*, 618 N.W.2d 240 (Wis. Ct. App. 2000), because his post-accident state of mind did not permit him to adequately object to the draw. The court disagreed and found that the blood was legally obtained. Nigl objected to the first, or diagnostic, blood draw on the grounds that it violated his doctor/patient privilege. The court again disagreed and found that the diagnostic blood draw was admissible.

When Nigl appealed the court's decision he alleged that the blood draws should have been suppressed because the police officer failed to follow Wis. Stat. § 343.305(9)(a), which requires the officer to provide notice of intent to revoke the license of anyone who refuses consent. He also

7

argued that there was no probable cause to draw his blood. The court of appeals found that because Nigl did not specify these grounds for objection at the trial level or in his motions to suppress the blood draws, he waived the issues.

Nigl again raises the issue that the blood draws were not obtained with probable cause and further argues that he preserved the objection on such grounds because he filed a document entitled "probable cause/personal jurisdiction" with the state trial court. Nigl further alleges that the blood draws were for the purpose of incriminating him; and because he was in police custody but not read his Miranda rights, the blood is inadmissible.

The State is correct in asserting that Nigl's claims are procedurally barred. When a state court determines that an issue has been waived, it is not generally the place of the federal courts to step in and assess the waived issues anew. As the Supreme Court has put it:

> [i]n all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson,* 501 U.S. 722, 750 (1991).

Thus, a procedural default exists if the state court decision rests on a state procedural rule that is independent of the federal question and adequate to support the judgment. *Conner v. McBride,* 375 F.3d 643, 648 (7th Cir. 2004). Here, the Wisconsin Court of Appeals ruled that Nigl waived his lack of probable cause claim because he did not specifically object on those grounds at trial. The Wisconsin Court of Appeals cited *State v. Agnello*, 593 N.W.2d 427, 430 (Wis. 1999), which holds that when the objection is not specifically stated, it is waived.. Thus, the state court dismissed Nigl's claim pursuant to a state procedural rule. Therefore, Nigl's probable cause claim

is barred in this federal habeas review unless he can demonstrate cause and actual prejudice, or can show that a failure to examine his federal claim will result in a "fundamental miscarriage of justice." *Coleman,* 501 U.S. at 750.

Nigl has alleged that it would be a fundamental miscarriage of justice if this court did not examine his federal claim because of the prosecution's misconduct during trial. Specifically, Nigl alleges that the prosecution deliberately lied to the trial court and devised ways to illegally draw blood.

Federal courts will hear claims that the state courts had procedurally barred if the failure to do so would result in a "fundamental miscarriage of justice." *Id.* This occurs when "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier,* 477 U.S. 478, 496 (1986). Nigl alleges that the prosecutorial misconduct resulted in the illegal blood draws, which showed a blood alcohol content in excess of the legal limit. Nigl thus does not argue that he was actually innocent of the crime, nor do the facts support such a claim. He presents no evidence to suggest that the blood was tampered with or that it was not his blood. As a result, no fundamental miscarriage of justice would result if this court did not review his claim.

Nigl also alleges for the first time, that he was under arrest when the legal blood draws were obtained, he was not read his Miranda rights, and that the blood draws were to be used solely for incriminating purposes. As a result, the blood draws amounted to an illegal search and seizure. As Nigl asserts this objection for the time in his habeas corpus petition, the claim is procedurally barred as well. "A federal court cannot address the merits of constitutional claims brought in a petition for

9

habeas corpus relief unless the state courts have had a full and fair opportunity to review them." *Farrell v. Lane,* 939 F.2d 409, 410 (7th Cir. 1991).

In sum, to the extent Nigl fairly presented any federal claims to the state courts based on the seizure of his blood, such claims were deemed waived and there is no basis to revisit them on federal habeas review. To the extent he brings any new claims in the current proceeding, those claims are procedurally defaulted because they were never presented to the state courts in the first place.

Accordingly, because I find no basis on which to grant the relief Nigl seeks, the petition is denied and this case is dismissed.

**SO ORDERED** this   17th   day of March, 2006.

s/ William C. Griesbach
William C. Griesbach
United States District Judge